UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SUNA BESHATOVA,<br><br>                          Plaintiff,<br><br>      v.<br><br>MICHAEL J. ASTRUE, Commissioner of<br>Social Security,<br><br>                          Defendant. | Case No. C09-5658RBL-KLS<br><br>REPORT AND RECOMMENDATION<br><br>Noted for December 3, 2010 |

Plaintiff has brought this matter for judicial review of the decision of the Commissioner of Social Security ("Commissioner") to deny her application for supplemental security income ("SSI") benefits.  This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976).  After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that the Commissioner's decision be reversed and that this matter be remanded thereto for further administrative proceedings.

<u>FACTUAL AND PROCEDURAL HISTORY</u>

Plaintiff currently is 61 years old. Tr. 29.  She has a fourth grade education and has not performed any work since 1989. Tr. 20.  On October 20, 2006, plaintiff filed an application for SSI benefits, alleging disability as of July 25, 2006, due to diabetes, varicose veins and lumps on her head. Tr. 11, 80.  Her application was denied initially and on reconsideration. Tr. 11, 29-31,

REPORT AND RECOMMENDATION - 1

38. A hearing was held before an administrative law judge ("ALJ") on May 7, 2009, at which plaintiff, represented by counsel, appeared and testified through an interpreter. Tr. 17-28.  On June 17, 2009, the ALJ issued a decision, in which he determined plaintiff to be not disabled, finding specifically in relevant part:

(1) at step one of the sequential disability evaluation process,[1] plaintiff had not engaged in substantial gainful activity since her application date; and

(2) at step two, although plaintiff had medically determinable impairments consisting of diabetes mellitus and hypertension, she did not have an impairment or combination of impairments that significantly limited – or was expected to significantly limit – her ability to perform basic work-related activities for 12 consecutive months, and, as such, she did not have a "severe" impairment or combination of impairments.

Tr. 11-16.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on September 11, 2009, making that decision the Commissioner's final decision. Tr. 1; 20 C.F.R. § 416.1481.

On October 20, 2009, plaintiff filed a complaint in this Court seeking review of the Commissioner's final decision. See (ECF #1-#3).  The administrative record was filed with the Court on January 12, 2010. See (ECF #12).  Plaintiff argues that for the following reasons, the decision of the Commissioner should be reversed and remanded thereto for an award of benefits or, in the alternative, for further administrative proceedings:

(a) the ALJ erred in evaluating the medical evidence in the record in finding plaintiff did not have a severe impairment;

(b) this matter should be remanded for consideration of new and material evidence submitted for the first time to the Court; and

(c) this matter should be remanded for consideration of a lay witness statement from plaintiff's daughter submitted for the first time to the Appeals Council.

---

[1] The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

REPORT AND RECOMMENDATION - 2

The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, recommends that although the ALJ's decision should be reversed, this matter should be remanded to the Commissioner for further administrative proceedings. While plaintiff has requested oral argument in this matter, the undersigned finds such argument to be unnecessary here.

## DISCUSSION

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the proper legal standard were applied and there is substantial evidence in the record as a whole to support the decision. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.      The ALJ's Evaluation of the Medical Evidence in the Record at Step Two

At step two of the sequential disability evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 416.920. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 416.920(a)(4)(iii), (c); Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b); SSR 85- 28, 1985 WL 56856 *3.

REPORT AND RECOMMENDATION - 3

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." SSR 85-28, 1985 WL 56856 *3; see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988). Plaintiff has the burden of proving that her "impairments or their symptoms affect her ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); see also Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. See Smolen, 80 F.3d at 1290.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881

REPORT AND RECOMMENDATION - 4

F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss all evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; see also Tonapetyan, 242 F.3d at 1149.

A. Plaintiff's Hypertension

As noted above, the ALJ found plaintiff did not have a severe impairment or combination of impairments. Plaintiff argues this finding is not supported by substantial evidence. In regard

REPORT AND RECOMMENDATION - 5

1  to plaintiff's diabetes and hypertension, the ALJ found in relevant part as follows:

2  
3  
4  
5  
> The record shows that when the claimant first arrived in the United States in 2006, she was found to have uncontrolled diabetes and hypertension, but that once treatment with medication and diet was initiated, these conditions were adequately controlled. However, the record reflects that the claimant did not fully comply with treating source recommendations at first, and that once medication therapy was followed, her conditions markedly improved by November 2006. . . .

6  
7  > . . .

8  
9  
10  
> . . . Dr. [Eve] Paratsky's [treatment] notes show the claimant's diabetes is well controlled with medication, and shows that the claimant's blood pressure is well controlled with medication, but that there are indications the claimant is not taking her medication consistently. (Ex 8F at 18, 23, 27, 31).

11  
12  
13  
14  
15  
> Given the medical record, the claimant's allegations have absolutely no credibility. Her presentation and claims are belied by the record of treatment, in which she is repeatedly observed as being in no acute distress and repeatedly noted to report that she feels well. While the record establishes that the claimant has been diagnosed with diabetes mellitus and hypertension, the evidence shows these conditions are well controlled with treatment. There is no indication she experiences symptoms that have more than a minimal effect on her ability to perform basic work activity. . . .

16  Tr. 14-15. Plaintiff does not challenge the ALJ's findings regarding her diabetes (see (ECF #16,

17  p. 11 ("[T]he ALJ notes that Plaintiff's diabetes was in good control, which is consistent with the

18  medical record.") – and, indeed, the evidence in the record that was before the ALJ supports his

19  findings here (see Tr. 169-71, 176-77, 181, 185, 187-88, 190, 192-93, 195-96, 198, 201-03, 206-

20  07, 210-11, 213-17, 219, 224) – but does assert the ALJ improperly found her hypertension was

21  controlled on medication, and thus erred in also finding it to be non-severe.

22  
23  The undersigned agrees the substantial evidence in the record does not fully support the

24  ALJ's determination that plaintiff's hypertension was controlled with treatment. It is true that in

25  late November 2006, her hypertension was noted to be "much better" with the addition of a new

26  medication (see Tr. 176-77), and in early February 2007, a non-examining, consulting physician

REPORT AND RECOMMENDATION - 6

found that condition to be non-severe, despite noting her blood pressure was "still high" though "improved" (Tr. 164).  In late March 2007, plaintiff's hypetension again was found to be "well controlled" by Arthur Lew, M.D., the physician who first treated her. Tr. 169.  But in early June 2007, plaintiff's more recent treating physician, Dr. Paretsky, opined that her hypertension was "[i]mproved but certainly not controlled." Tr. 220.

In late July 2007, Dr. Paretsky found plaintiff's hypertension to still be "uncontrolled", and commented that "[a]t this time addressing her elevated [blood pressure took] precedence." Tr. 217-18.  In early December 2007, Dr. Paretsky noted that her hypertension was "[n]o better," though she did state it was "hard to believe" the hypertension medications made "no difference," despite plaintiff's report of having taken all of them. Tr. 211.  In late January 2008, Dr. Paretsky continued to find plaintiff's hypertension to be "[u]ncontrolled", going so far as to opine that it remained "completely" uncontrolled. Tr. 206-07.  In late May 2008, Dr. Paretsky stated that she had "[t]ried to impress on" plaintiff the "importance of going [to a cardiology clinic to which Dr. Paretsky earlier had referred her, but in regard to which plaintiff had failed to follow up (see Tr. 236)]," as Dr. Paretsky had "not made a dent in her [blood pressure] and need[ed] help." Tr. 202. In late December 2008, Dr. Paretsky noted plaintiff's blood pressure continued "to be too high," and again found her hypertension to be uncontrolled. See Tr. 196.

Accordingly, the record shows plaintiff's hypertension did not remain controlled beyond November 2006, as found by the ALJ.  It is true that there is evidence in the record that plaintiff did not fully comply with recommended treatment for her hypertension.  For example, as noted above, Dr. Paretsky found it "hard to believe" in early December 2007, plaintiff's hypertension medications made "no difference," strongly indicating she did not find completely credible her report of "having taken all of them." Tr. 211.  Also as noted above, plaintiff failed "to show for

REPORT AND RECOMMENDATION - 7

consecutive scheduled appointments" at the cardiology clinic to which Dr. Paretsky referred her. Tr. 236.  Further, in early January 2009, Dr. Paretsky "[b]egged her to take her [hypertension] med[ication]s before visits," but he did not think it would happen. Tr. 193.

Failure to assert a good reason for not following a prescribed course of treatment "can cast doubt on the sincerity of the claimant's pain [or other symptom] testimony." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989); see also SSR 96-7p, 1996 WL 374186 at *7 (testimony may be deemed less credible if medical reports or records show claimant is not following treatment as prescribed or there are no good reasons for failing to do so).  On the other hand, as pointed out by plaintiff, the ALJ "must not draw any inferences" about a claimant's pain and/or symptoms and their functional effects from such a failure, "without first considering any explanations" that the claimant "may provide, or other information in the case record, that may explain" that failure. Id.  Thus, "before basing a denial of benefits on noncompliance" with recommended treatment," the ALJ first "must 'examine the medical conditions and personal factors that bear on whether [a claimant] can reasonably remedy' his impairment." Byrnes v. Shalala, 60 F.3d 639, 641 (9th Cir. 1995); see also Gamble v. Chater, 68 F.3d 319, 321 (9th Cir. 1995) (benefits may not be denied due to failure to obtain treatment because of inability to afford it).

The ALJ did not do so here, even though he clearly based his determination that plaintiff was not disabled in part on plaintiff's non-compliance with recommended treatment at step two of the sequential disability evaluation process.  Such failure constitutes reversible error.  Further, because it is not clear why plaintiff did not comply with her physician's recommended treatment, and because the ALJ improperly found plaintiff's hypertension was controlled on medication for the period as of November 2006, remand for further consideration of these issues is appropriate, even though the evidence in the record would appear to support the ALJ's statement that "[t]here

REPORT AND RECOMMENDATION - 8

is no indication she experience[d] symptoms that [had] more than a minimal effect on her ability to perform basic work activity." Tr. 15.

B.     Plaintiff's Varicose Veins

Plaintiff next argues the ALJ erred in evaluating the evidence in the record regarding her varicose veins. In regard to that alleged impairment, the ALJ found that in contrast to plaintiff's "allegations of varicose veins, on examination her legs [were] normal," there was "no indication of chronic varicosities" and, although the record showed plaintiff "was found to have varicosities present in July 2008, . . . they were asymptomatic." Tr. 14. The undersigned finds no error on the part of the ALJ here. It is true, as plaintiff points out, that the medical evidence in the record contains various notations of varicose veins, but, as noted by the ALJ, those notations are largely devoid of any indication that condition resulted in any work-related symptoms. See Tr. 185, 187, 190, 192, 195, 198, 201, 203, 206, 210, 213, 215, 217, 219, 221, 224.

As also noted by the ALJ, Dr. Paretsky noted varicose veins with inflammation in his late July 2008 treatment note, but she did not link the inflammation to any work-related limitations. See Tr. 199. This is significant, since without that link, neither the inflammation nor the varicose veins themselves can be considered significantly limiting or disabling. See Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of a disability."). Plaintiff argues that it appears the notations to asymptomatic varicose veins made by Dr. Paretsky, indicate she "simply did not always make notes regarding [her] varicose veins." (ECF #16, p. 13). This assertion, however, is nothing but merely speculation. That is, nothing in the record before the ALJ at all indicates Dr. Paretsky did any such thing.

C.     Degenerative Changes in Plaintiff's Knees

Plaintiff argues the ALJ erred in failing to address the medical evidence in the record

REPORT AND RECOMMENDATION - 9

regarding his knees: specifically, x-rays thereof showing mild to moderate degenerative changes. See Tr. 230-31.  Again, though, the undersigned finds no error here.  See Matthews, 10 F.3d at 680 (mere existence of impairment is insufficient proof of disability).  The above x-rays give no indication what, if any, impact those degenerative changes have on plaintiff's ability to perform basic work activities.  Indeed, the fact that they were noted to be mild to moderate suggests that any impact they may have had was not particularly significant.  In addition, no medical opinion source in the record has found any such impact.

D.     Dr. Paretsky

The record contains a letter from Dr. Paretsky, dated April 17, 2009, regarding plaintiff's ability to use her hands to lift, carry and perform fine motor tasks, which the ALJ addressed as follows:

> The record shows the claimant requested a letter from Eve Paresky, M.D., stating that she cannot work, and reported that this letter was needed for her [Washington State] DSHS [Department of Social and Health Services] paperwork. (Ex 8F at 3).  Dr. Paretsky accommodated the claimant, and provided a letter stating that the claimant suffers from peripheral neuropathy of the hands and feet, making it difficult for her to use her hands for lifting, carrying, and fine motor tasks. (Ex 9F).  The undersigned accords zero weight to this conclusory statement.  There is no support whatsoever for this statement in Dr. Paretsky's treatment notes, which only once refer to numbness. (Ex 8F at 17).  Rather, Dr. Paretsky repeatedly recorded that the claimant's diabetes is without complication. (Ex 8F).  Dr. Paretsky's notes show the claimant's diabetes is well controlled with medication, and shows that the claimant's blood pressure is well controlled with medication, but that there are indications the claimant is not taking her medication consistently. (Ex 8F at 18, 23, 27, 31).

Tr. 15.  Plaintiff argues the ALJ erred in so rejecting the opinion contained in the letter written by Dr. Paretsky.  The undersigned disagrees.

First, as discussed above, while the ALJ erred in finding her hypertension was controlled – and thus this was not a valid basis for rejecting Dr. Paretsky's opinion – it appears Dr. Paretsky

REPORT AND RECOMMENDATION - 10

based her opinion on plaintiff's diabetes.  While Dr. Paretsky did not set forth in her letter which particular condition or conditions she based that opinion on, the record establishes it was based on plaintiff's diabetes.  In early February 2009, plaintiff, as noted by the ALJ, asked Dr. Paretsky to write a letter to DSHS stating she could not work.  See Tr. 187.  In the treatment note in which that request was recorded, Dr. Paretsky wrote the following comment immediately below the diagnosis of diabetes she gave: "letter given (copied the letter I wrote about a year ago for the same reason)[2] for her to give to DSHS [f]or SSI."  Tr. 188.

      Indeed, in late July 2007, again immediately under the diabetes diagnoses plaintiff was given by Dr. Paretsky, the following comment was made: "letter written for disability."  Tr. 217.  But as noted above, plaintiff does not challenge the ALJ's non-severity determination in regard to her diabetes, nor does the undersigned find any error therewith.  Given that, once more as properly found by the ALJ, the medical evidence in the record fails to support the presence of any symptoms stemming from that condition that have resulted in any work-related limitations, the ALJ further properly discounted Dr. Paretsky's late April 2009 disability opinion.  Plaintiff argues the ALJ erred in rejecting that more recent opinion on this basis without first attempting to develop the record in regard thereto.  Again, the undersigned finds no error here.

      Specifically, plaintiff points to references to DSHS examinations made by Dr. Paretsky in her treatment notes that were not included therewith or contained elsewhere in the record.  First, plaintiff points to the treatment note completed in late May 2008, which, as noted by the ALJ, is the only note to mention any diabetes-related symptoms, namely "numbness in both hands." Tr. 201.  In the physical examination section of that progress note, it states:

> **Constitutional:**
> No acute distress.  Nourishment type is obese.  Well developed.

---

[2] This earlier letter does not appear to be contained in the record.

REPORT AND RECOMMENDATION - 11

>    Comments: please see DSHS exam
>    **Neurological:** Alert and oriented

Tr. 201-02 (emphasis in original).  Plaintiff argues the ALJ was under a duty to further develop the record by re-contacting Dr. Paretsky to obtain the "DSHS exam" referred to above.

It is true that an ALJ has the duty "to fully and fairly develop the record and to assure the claimant's interests are considered." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations omitted).  However, it is only where the record contains "[a]mbiguous evidence" or the ALJ has found "the record is inadequate to allow for proper evaluation of the evidence," that this duty to "conduct an appropriate inquiry" is triggered. Id. (citations omitted); see also Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001).  The Commissioner's regulations further provide that when evidence received from a medical opinion source is inadequate to determine whether a claimant is disabled, that source will be re-contacted to seek additional evidence or clarification, when the evidence "contains a conflict or ambiguity that must be resolved, . . . does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.912(e)(1).

The undersigned, though, agrees with defendant that this is not a case were the evidence in the record is ambiguous or inadequate to allow for a proper evaluation thereof.  Rather, there simply is no indication from the record that was before the ALJ that any further documentation referenced by Dr. Paretsky in the above progress note, to the extent such does exist, contains any significant probative evidence that would call into question the ALJ's rejection of Dr. Paretsky's opinion or her assessment of plaintiff's diabetes at step two.  As such, the ALJ's duty to further develop the record or to re-contact Dr. Paretsky was not triggered here, nor was it with respect to any other such reference made by Dr. Paretsky in her treatment notes. See, e.g., Tr. 221 (asking reader to see "DSHS eval" for "remainder of today's visit details" in treatment not in which only

REPORT AND RECOMMENDATION - 12

hypertension, not diabetes, was diagnosed).

II.     The Additional Evidence Submitted to the Court

Plaintiff has submitted for the first time in this matter to the Court several documents that Dr. Paretsky completed. Specifically, there are three DSHS physical examination forms wherein Dr. Paretsky found plaintiff to have significant limitations in her ability to perform work-related activities based variously on her diabetes, hypertension, varicose veins, knees, and other physical conditions. See (ECF #16-2). In addition, those documents contain what apparently is the late July 2007 letter noted above, in which Dr. Paretsky wrote that plaintiff suffered from "diabetes and very high blood pressure," and that she was "unable to do the work which she [had] done for most of her life (farm labor) and [was] unlikely able to retrain for a new type of work given her illness and trouble with the English language." See id. All of these documents are dated prior to the date the ALJ issued his non-disability decision.

In general, "judicial review of agency action is limited to review of the administrative record." Animal Defense Council v. Hodel, 840 F.2d 1432, 1436 (9th Cir. 1988); see also Ranchers Cattlemen Action Legal Fund v. U.S. Dept. Of Agric., 499 F.3d 1108, 1117 (9th Cir. 2007) (focal point for judicial review should be administrative record already in existence, not some new record made initially in reviewing court) (quoting Camp v. Pitts, 411 U.S. 138, 142 (1973)). It is only under certain narrow, limited circumstances that can "extra-record evidence" be admitted and considered:

> (1) if admission is necessary to determine whether the agency has considered all relevant factors and has explained its decision, (2) if the agency has relied on documents not in the record, (3) when supplementing the record is necessary to explain technical terms or complex subject matter, or (4) when plaintiffs make a showing of agency bad faith.

Ranchers Cattleman Action Legal Fund, 499 F.3d at 1117; see also Animal Defense Council,

REPORT AND RECOMMENDATION - 13

840 F.2d at 1436-37.

None of these four factors are present in this case. Clearly, there is nothing to indicate the Commissioner relied on documents not in the record. Nor is supplementation necessary to explain technical terms or complex subject matter. As to the first circumstance set forth above, only when "such a failure to explain agency action effectively frustrates judicial review," may the Court "'obtain from the agency, either through affidavits or testimony, such additional explanation of the reason for the agency decision as may prove necessary.'" Animal Defense Council, 840 F.2d at 1436 (quoting Camp, 411 U.S. at 143). The undersigned finds, however, that while the ALJ erred in determining plaintiff's hypertension was non-severe, that error did not effectively frustrate the Court's ability to review the decision itself.

That leaves the fourth and last circumstance, agency bad faith. But "[f]or this exception to apply, '[n]ormally there must be a strong showing of bad faith or improper behavior before the court may inquire into the thought processes of administrative decisionmakers.'" Id. at 1437. In this case, clearly there is no evidence of such bad faith or improper behavior either on the part of the ALJ or the Commissioner. In the Social Security context, the standards set forth in 42 U.S.C. § 405(g) come into play. Under those standards, to justify remand, plaintiff must show that the additional evidence is "new" and "material" to determining disability, and that she "had good cause for having failed to produce that evidence earlier." Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir. 2001); see also Orteza v. Shalala, 50 F.3d 748, 751 (9th Cir. 1995).

To be material, "the new evidence must bear 'directly and substantially on the matter in dispute.'" Mayes, 276 F.3d at 462 (citation omitted). A "reasonable possibility" that the new evidence "would have changed the outcome of the administrative hearing" also must be shown. Id. (citation omitted). To demonstrate "good cause," plaintiff must show the new evidence "was

REPORT AND RECOMMENDATION - 14

unavailable earlier." Id. at 463.  Further, the good cause requirement will not be met by "merely obtaining a more favorable report once . . . her claim has been denied." Id.

Clearly, the additional evidence from Dr. Paretsky is new and material, as it has not been presented previously and, had the ALJ had that evidence before he issued his decision, there is a reasonable possibility it could have changed his ultimate disability determination.  As such, the first standard has been met here.  Plaintiff, however, has not satisfied the second prong, since she has not demonstrated good cause for failing to provide that evidence to the ALJ or to the Appeals Council earlier.  Indeed, plaintiff herself admits she does not know why that evidence was not provided earlier. See (ECF #16, p. 16).[3]  Plaintiff argues that in light of her limited education, her recent arrival in this country and her inability to speak English, she could not be expected to have provided that evidence.

But plaintiff had legal representation – although not by her current counsel – during the administrative review period in this matter, and apparently had access to interpretive services, at least at the hearing.  In addition, plaintiff, either herself or through her prior counsel, was able to submit other significant probative evidence for the ALJ's consideration.  It is true "that the good cause requirement 'often is liberally applied, where . . . there is no indication that a remand for consideration of new evidence will result in prejudice to the Secretary.'" Embry v. Bowen, 849 F.2d 418, 423 (9th Cir. 1988) (quoting Burton v. Heckler, 724 F.2d 1415, 1417-18 (9th Cir.1984)).  In both Embry and Burton, though, the Ninth Circuit expressly "held that the fact that the additional evidence could not have been presented at the time of the ALJ's" hearing or decision "was sufficient to establish good cause." Id. at 423-24 (citing Burton, 724 F.2d at 1418).

---

[3] Plaintiff's opening brief actually states that "[c]urrent counsel is not certain why this evidence was not requested and submitted earlier" (id.), but the undersigned presumes current counsel logically first would have asked plaintiff as well about that evidence prior to making this statement to the Court.

REPORT AND RECOMMENDATION - 15

Accordingly, Embry and Burton are distinguishable both on their specific facts and actual holdings. In addition, Johnson v. Schweiker, 656 F.2d 424, 427-28 (9th Cir. 1981), upon which plaintiff also relies to urge this Court to waive the good cause requirement, is distinguishable as the new evidence in that case was submitted for the first time to the Appeals Council, not the district court. Plaintiff next argues she did not submit the additional evidence from Dr. Paretsky solely to strengthen her claim. Rather, she asserts, that additional evidence merely "represents ongoing medical treatment by a physician whose recommendations had previously appeared in the record." (ECF #16, pp. 16-17). While this may make that evidence "material" as discussed above, clearly it was submitted for the purpose of showing that plaintiff was significantly more limited in her ability to perform work activities, as it consists of three disability evaluation forms and one disability opinion letter.

Finally, plaintiff argues that in determining whether good cause exists, the Court should consider as well "whether the ALJ met his duty of developing the record." (ECF #16, p. 17). But plaintiff cites to no legal authority to support his contention here. Instead, the failure to develop the record more goes to the issue of newness and materiality, which standard the undersigned has already found plaintiff met. In any event, this argument is without merit since, as also discussed above, the ALJ did not fail in his duty to fairly and fully develop the record. For all of the above reasons, therefore, the undersigned finds plaintiff has not demonstrated the requisite good cause for submitting the additional evidence from Dr. Paretsky, and thus for seeking remand for further administrative proceedings on that basis. Nevertheless, since this matter is being remanded to re-consider the evidence in the record regarding plaintiff's hypertension at step two, this additional evidence also should be considered to determine what impact, if any, it may have at that, and if necessary, the remaining steps in the sequential disability evaluation process.

REPORT AND RECOMMENDATION - 16

III.     The Lay Witness Statement Submitted to the Appeals Council

After the ALJ issued his decision, plaintiff submitted an affidavit from her daughter-in-law, in which she described her observations of plaintiff's physical and mental limitations. See Tr. 7.  In denying plaintiff's request for review of the ALJ's decision, the Appeals Council stated it had considered this additional evidence, but gave no specific reasons either for not adopting it or granting plaintiff's request, other than to state that it did not provide a basis for changing that decision. See Tr. 1-2.  Although it does not appear that plaintiff specifically is asserting error on the part of the Appeals Council here,[4] she does argue this matter should be remanded for further consideration of the above lay witness evidence by the ALJ.

In determining whether remand for such a purpose is proper, it is important to note that the Appeals Council must consider "new and material evidence" submitted to it where it "relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 416.1470(b); see also 20 C.F.R. 416.1476(b), 20 C.F.R. 416.1479.  Further, the Appeals Council "[s]hall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision," and "review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 416.1470(b).  Evidence is "new" for purposes of 20 C.F.R. § 416.1470(b), if it is "more than merely cumulative of other evidence in the record." Bergmann v. Apfel, 207 F.3d 1065, 1069 (8th Cir. 1999) (analyzing 20 C.F.R. § 404.970(b), analogous regulation governing disability insurance benefits claims cases); see also Hangartner v. Shalala, 865 F.Supp. 755, 759 (D.Utah 1994).

---

[4] Nor does it appear that plaintiff would prevail if that argument were raised. See Mathews v. Apfel, 239 F.3d 589, 594 (3rd Cir. 2001) (noting that no statutory authority, source of district court's review authority, authorizes district court to review Appeals Council decisions to deny review).

REPORT AND RECOMMENDATION - 17

Evidence is "material" if it is "relevant to the claimant's condition for the time period for which benefits were denied." Bergmmann, 207 F.3d at 1069-70 (evidence must not merely detail after-acquired conditions or post-decision deterioration of pre-existing condition); see also Williams v. Sullivan, 905 F.2d 214, 216 (8th Cir. 1990) (evidence obtained after ALJ decision is material if it relates to condition on or before ALJ's decision); Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987). In addition, there "must be a 'reasonable possibility that the new evidence would have changed the outcome of" the ALJ's decision "had it been before him." Gamer, 815 F.2d 1275, 1280; see also Rice v. Apfel, 8 F.Supp.2d 769, 775 (N.D.Ill. 1998); Hangartner, 865 F.Supp. at 759 (materiality exists if decision might reasonably have been different if evidence had been presented to ALJ).

As noted by plaintiff, additional evidence submitted for the first time to and considered by the Appeals Council becomes part of the "entire record." 20 C.F.R. § 416.1470(b); see also Penny v. Sullivan, 2 F.3d 953, 957 n. 7 (9th Cir. 1993); Nelson v. Sullivan, 966 F.2d 363, 366 (8th Cir.1992); Barbato v. Commissioner of Social Security Administration, 923 F.Supp. 1273 (C.D.Cal.,1996). Where the Appeals Council does consider that evidence, but declines to review the case, the Court may review the ALJ's decision and determine whether substantial evidence in the record, including that submitted to the Appeals Council, supports the ALJ's decision. Nelson, 966 F.2d at 366; see also Ramirez v. Shalala, 8 F.3d 1449, 1454 (9th Cir. 1993).

Defendant argues the affidavit from plaintiff's daughter-in-law does not warrant remand because there is no reasonable possibility it would have changed the outcome had the ALJ had it before him. The undersigned agrees there is no reasonable possibility that affidavit would have changed the outcome of the ALJ's decision. As discussed above, the ALJ based his non-severity determination at step two of the sequential disability evaluation process on the lack of medical

REPORT AND RECOMMENDATION - 18

evidence in the record concerning plaintiff's alleged impairments. Given that the determination at step two is to be made solely on the basis of such evidence,[5] it is unlikely the ALJ would have come to a different conclusion based on the above lay witness evidence. Nevertheless, again as this matter is being remanded in any event, the Commissioner should re-consider the affidavit to determine what impact, if any, it may have at step two and, if necessary, at the remaining steps in the sequential disability evaluation process.

IV.  This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

---

[5] While the Social Security Regulations do provide that the ALJ must take into account a claimant's pain and other symptoms at step two (see 20 C.F.R. § 416.929), "medical evidence alone is evaluated in order to assess the effects of the [alleged] impairment" at step two (See SSR 85-28, 1985 WL 56856 at *4).

REPORT AND RECOMMENDATION - 19

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain with respect to the ALJ's step two determination, this matter should be remanded to the Commissioner for further administrative proceedings.

## CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ improperly concluded plaintiff was not disabled, and should reverse the ALJ's decision and remand this matter to the Commissioner for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **December 3, 2010**, as noted in the caption.

DATED this 12th day of November, 2010.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 20